NICHOLAS MARCHI
Carney & Marchi, P.S.
7502 West Deschutes Place
Kennewick WA 99336
(509) 545-1055
Attorneys for Defendant
NICHOLAS SEAN CARTER

UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS SEAN CARTER,<br><br>Defendant | Case No. 2:20-CR-00005-SMJ-2<br>    2:19-CR-00183-SMJ-1<br>    4:19-CR-06063-SMJ-2<br><br>MOTION TO REOPEN DETENTION HEARING AND MODIFY DETENTION ORDER AND ATTACHED MEMORANDUM OF LAW<br><br>Note: 5/26/2020 at 2:30 pm<br>Before Magistrate Judge Dimke via video hearing at Richland |
|---|---|

## **MOTION**

COMES NOW the defendant, NICHOLAS SEAN CARTER, by and through his attorneys, CARNEY & MARCHI, and requests this Court reopen the Detention Hearing held on January 28, 2020. At the time of the hearing, on January 28, 2020, the Defendant waived hearing and a detention order was entered on all cases. Defendant reserved the right to reopen the Detention Hearing. Mr. Carter has now located a residence and would request that Court reopen the Detention Hearing. This motion is made pursuant to 18 U.S.C. §3145 and based on information, which did not exist at the time of the hearing. This motion is based on the attached memorandum of law.

DATED this 19th day of May 2020.

s/Nicholas Marchi
Nicholas Marchi, WSBA 19982

MOTION TO REOPEN
DETENTION HEARING  1

CARNEY & MARCHI

MEMORANDUM OF LAW

A.  Facts

Mr. Carter is charged by Indictment in Cause 2:20-CR-00005 three counts of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C §841(a)(1)(b)(1)(B)(viii); and one count of Felon in Possession of a Firearm in violation of 18 U.S.C §922(g). He is charged in Cause 2:19-CR-00183-SMJ-1 with two counts of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C§841(a)(1)(b)(1)(B)(viii).  His charged in cause no 19-CR-06063-SMJ-2 with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C  §841(a)(1)(b)(1)(B)(viii); one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §924(c);  and one count of Felon in Possession of a Ammunition in violation of 18 U.S.C §922(g).

At his last hearing, Mr. Carter accepted a Detention Order but reserved his right to renew his request as he need additional information to seek a residence to be released.  Mr. Carter has now located a residence.  He further raises this request based on the effects of the COVID-19 virus on the jail population and the fact that his hearing on all three of these matters will most likely be delayed due to the virus.

B.  Argument.

The defendant is requesting that this Court set conditions of release which will assure his appearance at all future proceedings pursuant to 18 U.S.C. Sect. 3141 et seq. Mr. Carter does not pose a flight risk. If he were released, he would seek treatment and employment and comply with all conditions of his release.  A review of his Franklin County matter that preceded this matter

and was the basis for one of the federal cases, shows he appeared for all hearing. Thus he is not a flight risk.

18 U.S.C § 3141 favors pretrial release over detention, it offers the court several choices in setting conditions of release. The court can release on personal recognizance; release on conditions; or order detention. The government must show that the defendant is a danger to the community or that he poses a flight risk. 18 U.S.C § 3142(e)-(g) The court considers these options based on a number of factors including the background of the defendant, his criminal history the nature of the charges and the least important factor the weight of the evidence. *United States v. Motanedi,* 767 F.2d 1403 (9th Cir. 1986) The government must show that there are no conditions of release that alleviate the risks as noted in the statute. *United States v. Windsor,* 785 F.755 (9th Cir. 1986)

The United States Supreme Court has indicated that the Eighth Amendment may not allow detention based on flight. The Court stated: "when the government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal and no more." *United States v. Salerno,* 481 U.S. 739, 753 (1987) (citing to *Stack v. Boyle,* 342 U.S. 1 (1951)

Finally, when a defendant moves for release on bail following pretrial detention, the court must consider three factors: "(1) the length of the pretrial detention; (2) the extent to which the prosecution is responsible for the delay of the trial; and (3) the strength of the evidence upon which the pretrial detention was based." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993)

In support of this request, Mr. Carter maintains that he is not a flight risk and does not pose a threat to the community and thus this Court can set conditions of release.

Finally, Mr. Carter would request that this Court set conditions of release based on the current health crisis confronting the Courts and correctional institutions.

COVID-19 is highly contagious and may be spread by asymptomatic individuals. It has no known vaccination or cure and has killed thousands. As of March 16, 2020, the new strain of coronavirus, which causes COVID-19, has infected over 181,904 people, leading to at least 7,139 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] The first case of COVID-19 in the United States was found in Snohomish County, Washington. The first death presumed to be from COVID-19 was also in the Seattle area – in Kirkland, Washington.

COVID-19 is an extremely dangerous disease. The best estimate for its overall fatality rate—i.e., its fatality rate among all demographics—is 0.3-3.5%, "which is 5-35 times the fatality associated with influenza infection." Beyrer Dec. ¶ 5;[3] *see also* Nick Wilson et al., *Case-Fatality Risk Estimates for COVID-19 Calculated by Using a Lag Time for Fatality*, 26(6) EID Journal (prepublication June 2020).[4] Fatality rates vary wildly, however, depending on both environmental and demographic risk factors.

The death rate for those deemed at-risk is even higher. It increases rapidly with age. Across all age groups, COVID-19 kills:

- 13.2% of people with cardiovascular disease
- 9.2% of people with diabetes

---

[1] https://www.worldometers.info/coronavirus/coronavirus-cases (updating regularly).

[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.

[3] Declaration of Chris Beyrer, MD, MPH, Professor of Epidemiology, Johns Hopkins Bloomberg School of Public Health, attached as Exhibit B.

[4] Available at https://wwwnc.cdc.gov/eid/article/26/6/20-0320_article.

MOTION TO REOPEN
DETENTION HEARING  4

- 8.4% of people with hypertension
- 8% of people with chronic respiratory disease
- 7.6% of people with cancer[5]

According to the CDC, the virus is mainly spread person-to-person "[b]etween people who are in close contact with one another (within about 6 feet)" and "[t]hrough respiratory droplets produced when an infected person coughs or sneezes."[6] The spread can be slowed, public health professionals say, if people practice "social distancing" by avoiding public spaces and generally limit their movement. "Social distancing" is not an option at the Benton County Jail. Like most correctional institutions, inmates housed at the Benton County Jail are in close quarters and forced to share bathrooms, laundry, and meal areas. The cell toilets rarely have lids and the tank often doubles as the sink for handwashing. Air circulation is uniformly poor. Infections that are transmitted through droplets, like influenza and SARS-nCoV-2 virus, are particularly difficult to control in detention facilities. These deficiencies now represent a threat not only to those being housed there but to the community at large.

Detaining Mr. Carter poses significant health risk to him, given the likelihood that COVID-19 will spread within the correctional facility that he is housed. The risk is not limited to him. The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As former Federal District Court Judge Weinstein for the Eastern District of New York stated: "We do not punish those who have not been proven guilty." *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing

---

[5] World Health Organization, *Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19)* at 12 (Feb. 28, 2020), at https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf.

[6] *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/about/transmission.html (last accessed on March 13, 2020).

MOTION TO REOPEN
DETENTION HEARING  5

murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC").

The United States Constitution affords pretrial detainees greater protection from dangerous conditions of confinement than those sentenced after conviction. *See*, *e.g.*, *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 934 (N.D. Cal. 2015) ("A jail violates both [the Fourteenth and Eight Amendments] if it incarcerates inmates under conditions posing a substantial risk of serious harm to their health or safety . . . and if [government] acted with deliberate indifference, that is, with conscious disregard for that risk[.]"); *Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 210 (D.P.R. 1998) ("The failure to screen incoming [inmates] for infectious diseases including tuberculosis" violates the Constitution).

This Court should consider the "total harm and benefits to prisoner and society" that detention of Mr. Carter will yield, relative to the heightened health risks posed to him, and that posed to the other inmates, court and BOP staff, and the community during this rapidly encroaching pandemic. *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

C.  **Conclusion.**

Clearly, release is warranted and is appropriate in this matter. Mr. Carter would ask for release on conditions that the Court determines are appropriate and that would ensure his attendance at further proceedings.

DATED this 19th day of May 2020.

Respectfully Submitted,

S/ *Nicholas Marchi*
Nicholas Marchi, WSBA 19982
CARNEY & MARCHI
Attorneys for Defendant

**CERTIFICATE OFSERVICE**

I certify that a copy of the Motion to Re-Open Detention Hearing was e-mailed via ECF on 5/21/2020, to S. Van Marter, Assistant United States Attorney, 402 E. Yakima, Suite 210, Yakima, WA 98901.

*S/ Nicholas Marchi*
CARNEY & MARCHI, P.S.
Attorneys for Defendant